FILED IN OPEN COURT
U.S.D.C. - Atlanta

OCT 16 2024

KEVIN P. WEIMER, Clerk
By _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Hon. Timothy C. Batten |
| | ) | |
| v. | ) | Criminal No. 1:24-cr-333-TCB |
| | ) | |
| VI BUI, | ) | 26 U.S.C. § 7212(a) |
| | ) | |
| *Defendant.* | ) | |

## CRIMINAL INFORMATION

The Defendant, VI BUI, having waived prosecution by indictment, the United States Attorney for the Northern District of Georgia charges:

### I.    Introductory Paragraphs

1. From at least in or around 2012, and continuing through May 2020, in the Northern District of Georgia and elsewhere, the Defendant, VI BUI ("BUI"), and others known and unknown to the United States Attorney, knowingly participated in a scheme to defraud the Internal Revenue Service ("IRS") by organizing, marketing, implementing, and selling tax shelters in the form of fraudulent syndicated conservation easements ("SCEs"), and by using means and methods intended to deceive the IRS about the legitimacy of those transactions and about the circumstances under which the fraudulent tax shelters were marketed and implemented.

1

2.  Each year, the creation and implementation of the SCE tax shelter scheme took a similar form: (1) the defendant and others created an entity ("the Fund Company"); (2) they used the Fund Company to purchase an ownership interest in another entity ("the Property Company") that owned vacant land; (3) they sold units in the Fund Company to taxpayer-participants; (4) they caused the Property Company to donate land outright or to donate a conservation easement over land; (5) they obtained a fraudulently inflated appraisal of the donation; and (6) participants in the Fund Companies claimed or caused to be claimed fraudulent tax deductions based on the fraudulently inflated appraisal amount. The taxpayer-participants paid fees to the SCE tax shelter promoters to participate in the SCE tax shelters.

3.  The fraudulent SCE tax shelters were organized, marketed, and sold to wealthy taxpayers through false and fraudulent means, including preparing and causing to be prepared, and filing and causing to be filed by the taxpayer-clients and entities with the IRS, false and fraudulent Forms 1040, U.S. Individual Income Tax Returns ("Forms 1040"), among other forms, reporting fraudulent tax deductions from the SCE tax shelters, resulting in the payment of substantially lower taxes by the taxpayer-clients than what they would have owed had truthful tax returns been filed.

## II.     The Defendant and Associated Entities

4. From in or around 2011 through 2022, BUI worked as an attorney and partner at Sinnott & Company, an Atlanta-based company, which held itself out to the public as a law firm. James Sinnott ("Sinnott") was an attorney who was the founding partner of Sinnott & Co.

5. Sinnott & Co. served as general counsel to and a business arm of Inland Capital Management ("ICM"), an umbrella organization founded by Jack Fisher ("Fisher") that organized, promoted, and sold illegal tax shelters primarily in the form of fraudulent SCE charitable contributions.

6. In his role at Sinnott & Co., BUI worked for Fisher and ICM since at least 2012. Beginning in 2013, BUI assisted Fisher, Sinnott, and others with the organization, marketing, and promotion of the SCE tax shelters. BUI served as the Executive Vice President and General Counsel of Preserve Communities, another company affiliated with Fisher and Sinnott, in 2019.

## III.     2014 Syndicated Conservation Easement Tax Fraud Scheme: Southern Appalachian Investment Fund 2014 and Thompson Mountain Holdings

7. In 2014, Fisher, Sinnott, BUI, and others, organized multiple SCE tax shelters. One of the Fund Companies, organized on or around October 30, 2014, was Southern Appalachian Investment Fund 2014 ("SAIF"). SAIF was organized, promoted, and sold to taxpayer participants and was an SCE tax shelter.

8.  BUI knew that, as of December 2014, Individuals A and B owned Thompson Mountain Holdings ("TMH"), a Property Company that owned land located in Western North Carolina.

9.  BUI knew that, on December 31, 2014, Fisher, Sinnott, and others caused a conservation easement to be placed on the land owned by TMH.

10. BUI knew that the amount of the deduction that a taxpayer could claim for a donation generally equaled the fair market value of the contributed property on the date of the contribution. BUI knew that the fair market value of a donation—including a donation of land or a conservation easement—was the price that a willing buyer would pay a willing seller for the item donated, with neither being required to act, and both having reasonable knowledge of the relevant facts.

11. In addition, BUI knew that the regulations and caselaw affecting the valuation of a conservation easement allowed for an appraiser to consider a property's highest and best use. Considering the highest and best use allowed for a valuation of the highest and most profitable use of the property for which it was adaptable and needed, or likely to be needed, in the reasonably near future, based on an objective assessment. A property's highest and best use had to be legally permissible, physically possible, financially feasible, and maximally productive.

12. BUI knew that the appraiser, Walter Douglas "Terry" Roberts II, at the direction of Fisher, Sinnott, and others, prepared an appraisal for the TMH

4

conservation easement, valuing the donated conservation easement at $24,240,000. BUI knew that the TMH conservation easement value was inflated and did not represent what a willing buyer would pay a willing seller for the land.

13. BUI knew that, in the ordinary course of business, Fisher signed TMH's 2014 IRS Form 1065, U.S. Return of Partnership Income ("Form 1065"), under penalties of perjury.

14. BUI also knew that TMH's 2014 Form 1065 reported to the IRS that SAIF owned 97% of TMH. In the spring of 2015, before the tax returns for TMH or SAIF were filed, BUI learned that an agreement transferring ownership of TMH to SAIF had never been executed by any of the parties.

15. Nevertheless, on its Form 1065, SAIF, a Fund Company, claimed a charitable contribution of $23,512,800, which represented a 97% interest in the fraudulently inflated and false appraised value of TMH's donation of the conservation easement.

16. BUI knew that, if the IRS learned that there had not been a written transfer of ownership of TMH to SAIF, the IRS would disallow the deduction.

17. Because SAIF could not show that it owned 97% of TMH, BUI knew that SAIF was not entitled to claim the fraudulently inflated $23,512,800 charitable contribution tax deduction and that each tax return for participants in SAIF claiming a portion of the tax deduction would be disallowed by the IRS.

5

18. IRS Notice 2017-10 was a publication issued on December 23, 2016, which alerted taxpayers that certain syndicated conservation easement transactions were "listed transactions," and required an IRS Form 8886, Reportable Transaction Disclosure Statement, for transactions "entered into on or after January 1, 2010, that [we]re the same as, or substantially similar to, the transaction described" in IRS Notice 2017-10.

19. IRS Notice 2017-10 applied to the SCE tax shelters BUI worked on with Fisher, Sinnott, and others. BUI participated in preparing all necessary documents to comply with IRS Notice 2017–10 for all relevant transactions.

20. Based on the issuance of IRS Notice 2017-10, in December 2016, Fisher, Sinnott, BUI, and others, were put on notice by the IRS, and thus knew and reasonably foresaw that the IRS would increase the number of audits of partnerships, like the SCE tax shelters, that claimed charitable contributions based on the donation of conservation easements.

21. Fisher, Sinnott, BUI, and others had been preparing for the eventuality of increased audits by the IRS years prior to December 2016 because they anticipated that the SCE tax shelter transactions would be audited. To deceive the IRS and with the intent to prevail in an inevitable audit, they used optics to disguise the SCE tax shelters as real estate investments and the taxpayer-participants' payments for units as "investments," rather than the naked purchase of tax

deductions associated with the foregone conclusion of an easement or land donation.

22. In summer 2018, BUI learned that Individual B had received a letter dated June 5, 2018, from the IRS asking for production of, among other things, sales agreements related to SAIF's purported purchase of TMH.

23. The letter was part of a targeted administrative action taken by IRS Criminal Investigation ("IRS-CI"), namely, an undercover operation.

24. Fisher, Sinnott, BUI, Stein Agee—an accountant at Accounting Firm 1, which was responsible for preparing the Fund Companies' and Property Companies' tax returns—and others knew that the documents related to the purchase of TMH by SAIF had never been executed. They also knew, and reasonably foresaw, that an audit of an individual taxpayer-participant in an SCE tax shelter could lead to further audits of other participants, the Fund Company, and the Property Company. To impede the IRS in the perceived audit of Individual B, and to preclude audits of other individuals or entities, BUI knew that Fisher, Sinnott, Attorney C, Stein Agee, and others, agreed to attempt to stall and delay what they believed was an IRS audit, in an effort to cause the statutes of limitations for auditing the Fund Company, SAIF, and the Property Company, TMH, to lapse.

25. In addition, BUI knew that Fisher attempted to direct Individuals A and B to sign certain false documents because the documents needed to match what had

already been filed with the IRS on TMH's and SAIF's respective tax returns. This was intended to make it appear to the IRS as if the sale documents of TMH to SAIF had been executed in 2014 before TMH donated the conservation easement.

26. In late-summer 2018, Fisher and Sinnott instructed BUI to prepare, and BUI did prepare, false and fraudulent documents related to TMH and SAIF, which stated that they were "effective as of the first day of December 2014." These documents were intended to deceive the IRS into believing that the documents were executed before the donation of the conservation easement and before TMH's or SAIF's respective 2014 tax returns had been filed.

27. On September 12, 2018, on behalf of Fisher and Sinnott, BUI sent a FedEx package with the falsified documents for the purchase of TMH by SAIF to Individual B. Having discussed the documents with Fisher, Sinnott, and Stein Agee, BUI knew and sent the package with the intent that Individual B would sign the false documents and then submit them to the IRS during IRS-CI's targeted administrative action.

28. BUI further knew that the falsified TMH sales documents delivered to Individual B had been created for submission to the IRS, and to deceive the IRS, during what he, and those with whom he acted, believed was an audit by the IRS.

29. BUI also caused copies of the newly edited documents to be sent, transmitted to, and shared with Stein Agee and staff accountants at Accounting Firm 1.

30. On February 13, 2019, at least one of the false and fraudulent documents prepared by BUI was submitted to the undercover IRS-CI agent during the targeted administrative action.

## COUNT ONE
**Corruptly endeavoring to obstruct or impede the due administration of the Internal Revenue Code**
**26 U.S.C. § 7212(a)**

31. Count One incorporates by reference the allegations set forth in Paragraphs 1 through 30 as though fully set out herein.

32. From in or about December 2013 through in or about February 2019, in the Northern District of Georgia and elsewhere, VI BUI, knowing that there was a targeted administrative action that he perceived to be an audit conducted by the Internal Revenue Service, but which was, in fact, an IRS-CI undercover operation, and reasonably foreseeing future audits of other taxpayer-participants, and Fund and Property Companies related to the defendant's SCE tax shelters, including, without limitation, Southern Appalachian Investment Fund 2014 and Thompson Mountain Holdings, did corruptly obstruct and impede, and corruptly endeavor to obstruct and impede, the due administration of the internal revenue laws, that

is, the targeted administrative action—the undercover criminal investigation he believed was an audit—and reasonably foreseeable future audits, by committing and causing to be committed various acts, each such act having a nexus to the perceived audit of an owner of Thompson Mountain Holdings and a reasonably foreseeable future audit, including, but not limited to, the following acts, among others:

a. BUI drafted the false Thompson Mountain Holdings sales and corporate management documents to be signed by Individuals A and B before being submitted to the IRS in 2018 to deceive the IRS during the targeted administrative action;

b. BUI mailed and caused to be mailed the false Thompson Mountain Holdings sales documents to be signed by Individuals A and B before being submitted to the IRS;

c. BUI submitted and caused to be submitted to Individuals A and B who, in turn, would have submitted to the IRS the false TMH sales documents;

d. BUI, with others, including Fisher, Sinnott, Attorney C, Attorney D, and others known to the United States Attorney, disguised the true nature of the SCE tax shelter transactions; and

e.  BUI, with others, concealed facts about the property from the IRS to

deceive the IRS about the inflated values in the appraisal.

In violation of Title 26, United States Code, Section 7212(a).

Respectfully submitted,

RYAN K. BUCHANAN
United States Attorney

CHRISTOPHER J. HUBER (GA Bar No. 545627)
Assistant United States Attorney
600 U.S. Courthouse
75 Ted Turner Drive, S.W.
Atlanta, GA 30303
(404) 581-6292; Chris.Huber@usdoj.gov

DAVID A. HUBBERT
Deputy Assistant Attorney General
U.S. Department of Justice, Tax Division

*/s/ Parker Tobin*
RICHARD M. ROLWING (OH Bar No. 0062368)
PARKER R. TOBIN (VA Bar No. 91126)
JESSICA A. KRAFT (MI Bar No. P80841)
NICHOLAS J. SCHILLING JR. (IL Bar No. 6327559)
Trial Attorneys
United States Department of Justice, Tax Division
4Con Building, 150 M. St. NE
Washington, D.C. 20002
(202) 353-9377 (RMR); Richard M. Rolwing@usdoj.gov
(202) 514-0454 (PRT); Parker.R.Tobin@usdoj.gov
(202) 514-7670 (JAK); Jessica.A.Kraft@usdoj.gov
(202) 514-5886 (NJS); Nicholas.J.Schilling@usdoj.gov